ALMEDA BERENICE YATES, APPELLANT, v. MARION WAYNE
YATES, APPELLEE.

FILED JUNE 7, 1920. No. 20768.

1. **Deeds:** CONSTRUCTION. The rule in Shelley's case was brought to
this state as a part of the common law, and does not conflict with,
and is not abrogated by, our statute (Rev. St. 1913, sec. 6195)
providing that the court shall carry into effect the expressed
intent of the parties.

2. ———: ———. Where the grantor in a deed conveys real prop-
erty to a person for life, with a limitation over to the "heirs" or
"heirs of the body" of such person, the words "heirs" or "heirs
of the body" have a technical meaning, and will be so interpreted
as words of limitation, unless the context or other expression in

the deed shows that a remainder was intended to go to certain described individuals, and that the words "heirs" or "heirs of the body" refer to them in aid of other description and were not intended to be used in their technical sense.

3. ———: ———. Where the limitation over is to "the heirs begotten of the body" of the person taking the life estate, these words, which at common law would create an estate tail, create here a conditional fee only, so that the tenant in tail, after issue born, is able to bar both the inheritance and the reversion by a deed.

4. ———: ———. Where property is conveyed by deed to a person for life and "remainder in *fee simple* to the heirs begotten of the body" of such person, it is evident that the words "heirs begotten of the body" cannot have been used in their technical sense so as to create a conditional fee, since an intention is expressed that those persons, taking the remainder, shall take in "fee simple" and, if they take in fee simple, they could not, at the same time, be limited to a conditional fee. The words "heirs begotten of the body" *held*, in the light of the context, to have been used as words of purchase and to have referred to the immediate children of the first taker.

APPEAL from the district court for Seward county: EDWARD E. GOOD, JUDGE. *Affirmed.*

*Thomas, Vail & Stoner,* for appellant.

*H. D. Landis* and *McKillip & Barth, contra.*

FLANSBURG, C.

Suit to quiet title by the plaintiff as grantee under a deed. Case dismissed, and plaintiff appeals.

The deed in question was made and delivered to the plaintiff in the year 1906 when she was a single woman. Her name was at that time Almeda Berenice Welty. Since then she has been married, her name now being Yates, and her son by this marriage is the sole defendant in the case.

By the terms of the deed in question the premises were conveyed to plaintiff, then Almeda Berenice Welty "for life * * * to have and to hold the same to the said Almeda Berenice Welty during her natural life

remainder in fee simple to the heirs begotten of the
body of the said Almeda Berenice Welty," and it was
further provided that "we (the grantors) do covenant
with the said Almeda Berenice Welty and with her heirs
above specified that we are lawfully seized of said prem-
ises."

The plaintiff contends that by operation of the rule in
Shelley's case she has a fee simple title to the property
covered by the deed.

It is strongly argued by defendant's counsel that the
rule mentioned has long outlived its usefulness, is not a
part of the law of this state, is not in accord with the
genius of our institutions, is an arbitrary rule which
violates the intention of the parties, and that, in fact,
it has been abrogated by our statutes and decisions.

The rule in Shelley's case has been generally recog-
nized by the courts of other states as having been
brought to this country as a part of the common law,
and it has been enforced by those courts except where
the rule has been modified, or abolished, or its operation
interfered with, by express statutory enactment. 18 C.
J. 319.

As originally stated in the decision itself (*Wolfe v.
Shelley*, 1 Coke, 93b, 76 Eng. Rep. Reprint, 206, 234), it
was a rule of law that "when the ancestor by any gift
or conveyance takes an estate of freehold, and in the
same gift or conveyance an estate is limited either
mediately or immediately to his heirs in fee or in tail,
that always in such cases 'the heirs' are words of limi-
tation of the estate, and not words of purchase."

Words of "limitation" were understood as terms de-
scribing the extent or quality of the estate conveyed,
while words of "purchase" were such words as would
disclose an intention of the grantor or devisor to de-
scribe certain particular individuals who should take an
estate direct from him and should not derive their es-
tate as an inheritance from the first taker.

In all cases, then, where the words "heirs" or "heirs of the body" were not further qualified or explained, by the context in which they were used, so as to indicate an intention to designate particular individuals or a particular class of individuals to be determined, who should take an estate direct, and not by inheritance from some person to whom the estate had been first conveyed, such words were construed as words of limitation.

This gave a legal definition to those terms. They were technical terms, and were taken to be used in their technical sense unless it could be gathered from other expressions in the instrument that they were intended to be used otherwise.

Opponents of the rule in Shelley's case argue that, when a grant is made to a person for life, and at his death to his heirs, it is apparent a life estate only is intended to be conveyed to the first person, and that this express intention should be preserved. However, it is also apparent that the estate given to such person was intended, after his death, to be handed down from him to his heirs in the ordinary line of descent. To give effect to both intentions, therefore, would hold the fee in abeyance until the death of the first taker, and then an inheritance springing from him to his heirs, when he, in fact, had been possessed of a life estate only and had never been seised of a fee title which could descend from him. Such an estate was then, and is even now, impossible to create. If the property is to descend from the first taker to his heirs as an inheritance under the law of descent, obviously he must first be vested with a fee, and there is no estate known in the law as an inalienable fee. It is thus apparent that, in order to carry out the general intention, expressed in the instrument, to the effect that the property shall descend from the first taker to his heirs through the process of an inheritance from him, it is found necessary to construe his estate as a fee title, though it may be denominated in the instrument as a life estate only.

That an estate cannot be devised to a person and then be required to be handed down by such person to his heirs has been decided by our court in *Loosing v. Loosing,* 85 Neb. 66.

When, therefore, the remainder was to descend to the heirs of the first taker, an ambiguity resulted, for both intentions of the devisor or grantor to create a life estate only and then let the property descend by inheritance from such life tenant could not, under the law, be carried out. The rule in Shelley's case determined simply which intention should be allowed to control in those instances where the instrument left that matter in ambiguity.

Had the rule in Shelley's case, on the other hand, been that these terms, when used in their technical sense, should always be understood as words of purchase, that would have sacrificed the general intention to the particular intention; for then, instead of the estate descending from the first taker to his heirs in the ordinary line of inheritance, it would have gone equally to all the particular descendants, children, grandchildren, and perhaps great-grandchildren, living at his death, and passed on through those particular individuals as sources of new lines of descent.

"The rule in Shelley's case is not really an exception to the rule that the intention of the testator must guide in interpreting a will, but only sacrifices a particular to a general intent." Note, 29 L. R. A. n. s. 1047, and cases cited.

In *Bowen v. Lewis,* L. R. 9 App. Cas. (Eng.) 890, Earl Cairns explains the matter thus: "You have an indication of a general intention, which you gather from the whole of the will, that the estate shall travel through the issue generally of a certain person. You have that accompanied, no doubt, with a particular intention that the first taker shall take an estate for life; but in order to give effect not to a technical construction, which would limit the first taker to a life estate, but to give effect to

the general intention of the testator, and to make the estate travel through the issue generally, as the testator intended it to do, you apply the rule in Shelley's case. Otherwise, if you do not do that, the consequence is that the only other resource which you have is to give the first taker in the series of issue an estate by purchase, in which case it will not go through the issue generally, but only through the descendants of that particular head of the issue."

It is said in *Kirby v. Broaddus*, 94 Kan. 48: "There is a reasonable basis for saying that the real intention of the grantor * * * is that upon the death of the grantee the new owners shall derive their title by inheritance. He obviously has in mind no particular beneficiaries of his own grant. He is content that the law, as it shall exist when the grantee dies, whatever it may be, and however it may have been changed since the execution of the deed, shall determine the disposition of the title. His essential purpose is as the rule interprets it—to vest the fee in the grantee, but to disable him from alienating it. This he cannot do, and the attempted restriction is ineffective."

In determining whether the rule in Shelley's case is applicable, it is first necessary to determine the intention with which the terms have been used; that is, whether or not they were used in their technical sense. The rule in Shelley's case is primarily based upon intention. When the rule, which had been previously announced and recognized before Shelley's case was decided, was, before that decision, referred to in the case of *Perrin v. Blake*, 10 Eng. Rul. Cas. 689, 695, Blackstone, commenting upon it, said: "I conceive that the great and fundamental maxim, upon which the construction of every devise must depend, is 'that the intention of the testator shall be fully and punctually observed, so far as the same is consistent with the established rules of law, and no further.'" And further, in that same connection, in answer to an argument that a better

rule would be to determine the intention of the testator alone and entirely from the instrument and without regard to rules of law, he said: "It were better that the statute of wills should be totally repealed than be made the instrument of introducing a vague, discretionary law, formed upon the occasion from the circumstances of every case; to which no precedent can be applied, and from which no rule can be deduced."

Mr. Fearne, in his work on Contingent Remainders (vol. 2, p. 221), says: "Hargrave has justly observed that the rule cannot be treated as a medium for discovering the testator's intention, but that the ordinary rules for the interpretation of deeds should be first resorted to; and that when it is once settled that the donor or testator has used words of inheritance, according to their legal import, has applied them intentionally to comprise the whole line of heirs to the tenant for life, has made him the terminus, by reference to whom the succession is to be regulated, then the rule applies."

It seems clear to us, therefore, that this rule does not operate in conflict with, and has not been modified by, our statute providing that: "In the construction of every instrument creating or conveying, or authorizing or requiring the creation or conveyance of any real estate, or interest therein, it shall be the duty of the courts of justice to carry into effect the true intent of the parties, so far as such intent can be collected from the whole instrument, and so far as such intent is consistent with the rules of law." Rev. St. 1913, sec. 6195.

The tendency of the rule in Shelley's case is to prevent estates from being held in abeyance and to throw land into commercial channels one generation sooner. We find many judicial expressions of approval of the rule, declaring it to be entirely in accord with American institutions and ideas. *Doyle v. Andis,* 127 Ia. 36.

The cases of *Albin v. Parmele,* 70 Neb. 740, and *Moran v. Moran,* 101 Neb. 386, are relied upon by the defendant

as establishing an abrogation, in part at least, of the rule in question.

In the case of *Albin v. Parmele,* the court decided the rule did not apply when inconsistent with the expressed intent of the parties. In that case there was an express prohibition against alienation by the first taker, who was given the right to use and enjoy the property only, and there was a limitation over to his "heirs," who at one place in the will were described as his "issue." The court determined that the limitation over was intended to be to the children of the life tenant, and not to his heirs generally. In that case, we might say, the word "issue" and the word "heirs" seem to have been used synonymously, and the word "issue" as ordinarily construed is a word of purchase. 18 C. J. 328. The intention of the testator being ascertained from the terms of the will, and it appearing that the word "heirs" was used *descriptio personæ* to designate the issue or children of the life tenant, the rule in Shelley's case, therefore, would not apply.

In the case of *Moran v. Moran, supra,* it appears that the court, by reason of the express restrictions placed upon the life tenant, confining him to the use of the property and expressly restricting alienation, allowed the particular intent of the grantor to create a life estate, to overcome the general intent that the estate should descend from the life tenant to his heirs. To allow that to be done is contrary to the rule stated. The meaning of the word "heirs," whether it was used as a word of limitation or of purchase, and, if a word of purchase, what particular individuals were intended to be described by such term, is not discussed in the opinion, nor did the court pass upon that necessary question.

On motion for rehearing in that case the court said: "In our former opinion it was said: 'We might concede that the rule in Shelley's case would continue and be the law in Nebraska, "unless abrogated by statutory enactment." ' If the discussion in that opinion follow-

Yates v. Yates.

ing this statement indicates ·that we consider that the rule in Shelley's case is abrogated in whole or in part by the 'intent' statute (Rev. St. 1913, sec. 6195), we desire to modify that opinion in that respect, as it is not necessary in this case to determine· that question."

We therefore feel that these decisions are not controlling and have not squarely passed upon the question of whether or not the rule in Shelley's case exists in this state.

As to the general recognition of this rule in other states, we call attention to the following citations: *Kirby v. Broaddus*, 94 Kan. 48; *Bails v. Davis*, 241 Ill. 536; *Newhaus v. Brennan*, 49 Ind. App. 654; *Woodford v. Glass*, 168 Ia. 299; *Waller v. Pollitt*, 104 Md. 172; *Hughes v. Titterington*, 168 S. W. (Tex. Civ. App. 1914) 45; *Williams v. Blizzard*, 176 N. Car. 146; and see 18 C. J. 319.

Giving recognition to the rule, then, since we must hold that it exists as a rule of law in Nebraska, what was the intention of the grantor, in the deed in the present case, when he used the words "remainder in fee simple to the heirs begotten of the body of Almeda Berenice Welty," and warranted the title "to the heirs above specified?"

It is the contention of the plaintiff that the deed created an estate tail, limited under our law to a conditional fee, and that by the birth of. issue a fee title absolute vested in the plaintiff.

At common law estates limited to the heirs of the body of the grantee were known as conditional fees, by reason of the condition that, should the grantee die without the particular heirs, the land would revert to the grantor. As soon as issue was born, the condition being accomplished, title vested in the grantee, and he. then had power to convey a fee title, cutting off, not only the rights of the issue, but the right of reverter to the grantor. However, even after issue was born, should the grantee die without leaving any issue or lineal descend·

ants, and without having made conveyance, the title reverted to the original grantor or his heirs.

It then became the practice for the grantee, upon issue being born, to make a conveyance and then repurchase from the person to whom he had conveyed, thus obtaining a title in fee simple in himself, which would descend to his heirs generally, instead of to his lineal descendants, and the right of the possibility of reverter of the estate to the grantor would also be foreclosed. To put a stop to this practice the statute *de donis* was enacted, providing that an alienation of the estate by the tenant in tail would carry the life interest of such tenant only, and would not destroy the right of inheritance to lineal descendants, nor prevent a reverter in case of the failure of issue.

The statute *de donis* was later, by court decision, rendered practically ineffective, and a disposal of land, so as to defeat the entail, was allowed through the process of what were known as fines and recoveries.

The statute *de donis*, preventing alienation of estates, repudiated at common law, is also contrary to the spirit of our institutions and cannot be held to be a part of the law of this state. In Iowa it has been expressly so held, and a conditional fee results in the place of an estate tail. *Pierson v. Lane,* 60 Ia. 60; *Kepler v. Larson,* 131 Ia. 438. And in Kansas a similar result is obtained by a holding that the common law, as taken by that state, recognized the right of alienation by the tenant in tail. *Ewing v. Nesbitt,* 88 Kan. 708.

The reasoning in those cases is sound, and it is our opinion that words which would at common law create an estate tail under the statute *de donis* would in this state create a conditional fee only; in other words, a grantor may, by proper terms, create an estate to descend to the lineal descendants of the first taker, and, upon failure of issue, provide a reverter to such grantor or his heirs. The title holder would, however, have power to alienate the property, after birth of

issue, so as to bar both the inheritance and the reversion.

The question, then, is whether the deed in this case created such a conditional fee in the plaintiff. The *habendum* clause in the deed in question recites "remainder in *fee simple* to the heirs begotten of the body of the said Almeda Berenice Welty." Our statute (Rev. St. 1913, secs. 6191, 6192) provides that the term "heirs" is unnecessary to create an estate of inheritance, and that every conveyance of real estate shall pass all the interest of the grantor therein unless a contrary intent can be reasonably inferred from the terms used. At common law the word "heirs" was necessary to create an estate of inheritance. Unless that term was used the grantee took a life estate only. By our statute the title passes in fee simple from the grantor unless a reservation can be inferred from the terms used in the deed. The use of the term "remainder in fee simple" both negatives the fact that the grantor intended to retain a reversionary interest and, furthermore, affirmatively expresses an intention that the "heirs begotten of the body of Almeda Berenice Welty" shall take the full title, and not one limited to lineal descendants. If these heirs take in fee simple, and if there is no reversion, then, obviously, the term "heirs begotten of the body" was not used in its technical sense, and cannot be construed as creating a conditional fee.

Those who are to take after the life estate are confined, by the terms of the deed, to the heirs of the body, a special class of heirs, and, if these heirs were to hold as tenants in fee simple, the land would descend from them and their general heirs, and in such event there would not be a succession from generation to generation to the same special class of heirs as that prescribed to take after the life tenant. If the heirs of the body of Almeda Berenice Welty were to take as tenants in fee simple, this would be neither a fee tail nor a fee simple in the first taker, but the heirs of her

body would constitute an original stock; that is, they would take by purchase, and not by descent. It is so held in the following cases: *Tucker v. Adams*, 14 Ga. 548; *Stephenson v. Hagan*, 15 B. Mon. (Ky.) 282; *Ætna Life Ins. Co. v. Hoppin*, 214 Fed. 928, and, also, 249 Ill. 406.

In the case of *Tucker v. Adams, supra,* where the limitation over was to the heirs of the body in fee simple, the court said: "Now, if the persons intended to take were intended to take in fee simple, they could not have been intended to take in fee tail—to take as 'heirs of the body.' Therefore the words, 'heirs of the body,' were not intended to have their ordinary legal import. What other import can they have? They cannot have the import of the words, 'heirs general.' * * * If they cannot have the ordinary legal import of the words heirs of the body, nor the import of the words heirs general, it follows that they cannot have any import which implies persons who are to take by descent, but must have an import which implies persons who are to take by purchase."

Treating the terms used in the instant case, then, as words of purchase, what particular individuals or class of individuals were the words "heirs begotten of the body of the said Almeda Berenice Welty" intended to designate?

We are of opinion that the words "heirs begotten of the body" were intended to describe children—those heirs only who were the immediate offspring. They are the only heirs, when the expression is taken in its literal, and not technical, sense, who are begotten of her body. We find such words have been so construed in other cases when the context of the deed was such as to show that they were used, not in their technical sense, but were used as words of purchase; and we take it that the words "fee simple," as used in this deed, have that effect.

104 Neb.—44

In the great mass of cases upon this subject, the words "heirs of the body" and "heirs of the body begotten," used in their technical sense, and where there is no explanatory context, are used indiscriminately, and are taken to indicate indefinite succession by inheritance. "Heirs of the body begotten" was the term used in the instrument upon which Shelley's case was decided.

Where, however, a remainder is limited to the heirs begotten of the body of the life tenant, and where the context in the deed demonstrates that these terms are used as words of purchase, they are, in many cases, held to show an intention on the part of the grantor to include the children only of the life tenant, and not all lineal descendants to be determined as a class at the death of such life tenant. *Stephenson v. Hagan, supra; Tucker v. Adams, supra; Granger v. Granger*, 147 Ind. 95; *Ault v. Hillyard*, 138 Ia. 239; *Sullivan v. McLaughlin*, 99 Ala. 60; *Fletcher v. Tyler*, 92 Ky. 145; *Rogers v. Rogers*, 3 Wend. (N. Y.) 503; *Reeves v. Cook*, 71 S. Car. 275.

We are therefore of opinion that plaintiff is possessed of a life estate only, with a limitation over to her children upon her death.

The deed was delivered when Almeda Berenice Welty was a single woman. The provision limiting the fee simple title to her children obviously contemplated children that should be born to her thereafter in case she should marry. The enjoyment of the estate by such children was postponed until after her death. The remainder is not to be construed as a limitation to those children only, as a class, who should be living at her death, but, as a remainder to such children as should be born to her, as the particular individuals who are objects of the grant. The defendant, then, has a vested remainder, subject to be opened at the birth of each succeeding child, so that afterborn children would take

as tenants in common with the defendant, and subject to the plaintiff's life estate.

We are .of opinion that plaintiff should not be allowed to prevail in this action, even if she were possessed of a conditional fee. If she had such an estate, she no doubt could convey a fee title, but should she fail to convey, and should die intestate, seised of such an estate, and leaving lineal descendants, they would be entitled to inherit. Her action is not based upon title derived through a conveyance made by her which would carry a fee, but her action is based upon her own interest in the deed itself, and is brought against the heirs to foreclose their right of inheritance. This would allow her both to keep the estate and to deny her descendants the right to inherit, in case of her death, in preference to her heirs generally, and would destroy the possibility of reverter to the grantor, even though she should make no conveyance and should die seised of the property. Such an action, certainly, between the life tenant, as such, and those entitled to the inheritance, could not be maintained.

For the reasons given, we are of opinion the case should be affirmed.

PER CURIAM. For the reasons stated in the foregoing opinion, the judgment of the district court is affirmed, and this opinion is adopted by and made the opinion of the court.

AFFIRMED.

ALDRICH, J., not sitting.

LETTON and ROSE, JJ., dissenting.

We dissent from that part of the opinion holding that the rule in Shelley's case is in force in this state notwithstanding the Nebraska statute relating to the construction of instruments conveying real estate and making it "the duty of the courts of justice to carry into effect the true intent of the parties, so far as such intent can be collected from the whole instrument, and so

far as such intent is consistent with the rules of law.''

If, as the majority opinion holds, the intent statute does not have the effect to abrogate the rule, then in our opinion the next legislature may well consider whether Nebraska should join the majority of the states and specifically and definitely make an end of it.