## CLARK v. EHBAUER et al.
### No. 9365.

Circuit Court of Appeals, Eighth Circuit.
July 29, 1932.

John H. Wiltse, of Falls City, Neb. (Waite, Schindel & Bayless, of Cincinnati, Ohio, and Wiltse & Wiltse, of Falls City, Neb., on the brief), for appellant.

Ira B. Burns, of Kansas City, Mo. (Paul T. White and Burns & White, all of Kansas City, Mo., on the brief), for appellees.

Before STONE and KENYON, Circuit Judges, and OTIS, District Judge.

KENYON, Circuit Judge.

This is an action brought by Mary Grandin Clark, appellant, against Della C. Ehbauer and her husband, Elmer J. Ehbauer, to quiet title to certain real estate in Nebraska, of which she claims to be owner, and, also asking judgment for rents and profits. Demurrers to the petition were sustained, and, appellant refusing to further plead, judgment and decree was entered dismissing her petition. The facts as alleged in the petition are therefore taken as true, and may be stated as follows: John W. Clark, who was the owner of certain real estate in Richardson county, Neb., sold and conveyed the same to his son, Clarence B. Clark, July 28, 1888. The deed contained this clause: "Know All Men By These Presents: That I, John W. Clark, of Kenton County, State of Kentucky, in consideration of Love and Affection and Eight Thousand dollars, to be charged in the distribution of my Estate among my legal heirs or devisees to my son Clarence B. Clark of Kenton County, Kentucky, the receipt whereof is hereby acknowledged, do hereby grant, bargain, sell and convey to the said Clarence B. Clark during the term of his natural life without power to encumber or convey the property, and to his heirs lineally descended from me, and to their heirs of lineal descent from me only, and assigns forever."

Also: "To have and to hold the same to the only proper use of the said Clarence B. Clark during his natural life and to his heirs of lineal descent from me and their heirs of lineal descent from me only and their assigns forever."

On February 5, 1923, said Clarence B. Clark conveyed said real estate to his second wife, Mary Grandin Clark, appellant, by quitclaim deed, in consideration of $1 and other valuable considerations. Mary Grandin Clark was married to Clarence B Clark

on the 10th of February, 1920, and they were husband and wife at the time of the death of Clarence B. Clark, who died intestate November 17, 1929. Previous to the marriage of Clarence B. Clark to appellant he had been divorced from his former wife, Mary E. Clark. Two children were born as the fruit of the first marriage. One died without issue before the death of her father. The other child was Della C. Ehbauer, appellee, who was the only heir lineally descended from Charles B. Clark and John W. Clark.

Appellant's position was and is that under the rule in Shelley's Case Clarence B. Clark had such title that his deed to appellant, Mary Grandin Clark, conveyed a fee-simple title or a qualified fee. The trial court held that the rule in Shelley's Case was not applicable, that Clarence B. Clark had only a life estate, and that Della C. Ehbauer, the daughter and sole heir of Clarence B. Clark, took title to the real estate in controversy at his death as a purchaser and became the owner in fee simple thereof. Decree was entered dismissing the petition.

We think it unnecessary to enter into any discussion of the rule in Shelley's Case and when an instrument is removed from its operation. We are satisfied the trial court was right in its holding that the rule in Shelley's Case is not applicable here. Judge Munger, who tried the case, on sustaining the demurrers, filed a written opinion. It is so in accord with our views and conclusion in the matter that we adopt the same as the opinion of its court and affirm the case on the strength thereof. It is as follows:

"The demurrer in this case presents the question whether the rule in Shelley's Case enabled the plaintiff's husband to convey to her the fee of the land in question. The plaintiff's husband was Clarence B. Clark. His father conveyed the land to him by a deed, the essential parts of which are as follows: 'Do hereby grant, bargain, sell and convey to the said Clarence B. Clark, during the term of his natural life, without power to encumber or convey the property, and to his heirs lineally descended from me, and to their heirs of lineal decent from me only, and assigns forever' (describing lands in Nebraska) 'to have and to hold the same to the only proper use of the said Clarence B. Clark, during his natural life, and to his heirs of lineal descent from me and their heirs of lineal descent from me only and their assigns forever.' Because of the words in the granting clause 'and to his heirs lin-

cally descended from me' and the words in the habendum clause 'and to his heirs of lineal descent from me,' the rule in Shelley's Case does not apply. The limitation over, after the life estate, was not to Clarence B. Clark's heirs generally nor to the heirs of his body, but was to a selected and described class of his heirs who were lineally descended from his father. The father, the grantor, by the additional limitation, sought to exclude certain legal heirs of Clarence B. Clark from possible inheritance under the laws of Nebraska. If the son died without having had children, his wife, his mother, his half-brothers, his uncles and aunts, could have been heirs, although not lineally descended from his father. Neb. Comp. St. 1929, §§ 30-101, 30-102, 30-111.

"The deed does not convey to Clarence B. Clark and to the heirs of his body, nor to his bodily heirs, by use of any equivalent words. In case he had died without having had children, his heirs, who would have been lineally descended from his father, would have included brothers and sisters, his paternal nephews and nieces, if any, none of whom would have been his bodily heirs.

"The deed provided for a succession having its root in blood descent from the father. Without discussing the many cases cited, the general rule is stated in Re Dorney's Estate (Appeal of Kuntzleman) 136 Pa. 142, 20 A. 645, 647, 20 Am. St. Rep. 909, as follows:

"'But, to bring the devise within the rule in Shelley's Case, the limitation in remainder must be to the heirs in fee, or in tail, as a nomen collectivum, for the whole line of inheritable blood. When the testator annexes words of explanation to "heirs," or "heirs of the body," "as to heirs now living," etc., using the terms as mere descriptio personarum, or for the specific designation of individuals, a new inheritance is thereby grafted upon the heirs to whom the estate is given, (4 Kent, Comm. 221;) and they will be assumed to take as purchasers. The rule in Shelley's Case, when applied to real property, enlarges the life-estate into an inheritance. The heirs in such case, therefore, to take qua heirs, and it is not in the power of the testator to prescribe a different qualification to heirs, from what the law prescribes, when they take in the character of heirs.'

"And this rule is also stated in DeVaughn v. DeVaughn, 3 App. D. C. 50, quoted with approval in DeVaughn v. Hutchinson, 165 U. S. 566, 17 S. Ct. 461, 41 L. Ed. 827, as follows:

" 'It is certainly a well-settled principle in the law of real property, indeed as well settled as the rule in Shelley's Case itself, that where an estate is expressly devised to a person for life, with remainder to the heirs of his body, and there are words of explanation annexed to such word heirs, from whence it may be collected that the testator meant to qualify the meaning of the word heirs, and not to use it in a technical sense, but as descriptive of the person or persons to whom he intended to give his estate, after the death of the first devisee, the word heirs will, in such case, operate as a word of purchase.'

"The rule in Shelley's Case does not apply for another reason; the clauses in both the grant and habendum giving the remainder to the heirs of Clarence B. Clark lineally descended from the grantor are followed by the further clause 'and to their heirs of lineal descent from me only' and 'their heirs of lineal descent from me only.'

"Chancellor Kent states that the rule in Shelley's Case does not apply if a 'testator annexes words of explanation to the word heirs, as, to the heirs of A now living, showing that he meant by the word heirs a mere descriptio personarum or specific designation of certain individuals; or, where the testator superadds words of explanation, or fresh words of limitation, and a new inheritance is grafted upon the heirs to whom he gives the estate. Thus it is in the case of a limitation to A for life, or for life only, and to the next male heir of his body, and the heirs male of such heir male; and in the case of a devise of gavelkind lands to A, and the heirs of his body as well female as male, to take as tenants in common. In such cases, it appears that the testator intended the heirs to be the root of a new inheritance, or the stock of a new descent, and the denomination of heirs of the body was merely descriptive of the persons who were intended to take.' 4 Kent, Comm. 221.

"In Myers v. Anderson, 1 Strob. Eq. (S. C.) 344, 47 Am. Dec. 537, the court cites this reference to Kent's Commentaries and says: 'All the authorities agree, that if the limitation be to the heirs of the body, or issue, and to their heirs, this constitutes them purchasers: as it shows an intention to give them an estate, not inheritable from the first taker, but an original estate, inheritable from themselves as a new stock of descent.' To the same effect see Lemacks v. Glover, 1 Rich. Eq. 141.

"In 1 Jones on Real Property, § 610, these cases are cited, with others, in referring to the rule in Shelley's Case, and it is stated: 'The rule does not apply where the limitation is to the heirs or issue of the first taker and their heirs, for in such case there is evinced a purpose to create in the heirs of the first taker an estate in fee simple.'

"In DeVaughn v. Hutchinson, 165 U. S. 566, 17 S. Ct. 461, 465, 41 L. Ed. 827, the court considered the application of the rule in Shelley's Case to a will devising land to M during her life and after her death equally dividing it between the heirs of her body begotten, share and share alike and to their heirs and assigns forever, and in closing the opinion said:

" 'In the view that we have taken of the case, we are not called upon to re-inforce the reasoning of the cases cited, but we shall add a single observation, in application of Chancellor Kent's statement of an exception to the rule. 4 Kent, Comm. (6th Ed.) 221. The word "heirs," in order to be a word of limitation, must include all the persons in all generations belonging to the class designated by the law as "heirs." But the devise here was to Martha Ann for life, and at her decease to her heirs begotten of her body, and to their heirs and assigns,—a restricted class of heirs; and this limitation shows that it was the intention of the testator that Martha Ann's children should become the root of a new succession, and take as purchasers, and not as heirs.'

"These decisions show that the daughter of Clarence B. Clark took title at his death as a purchaser, and thereby became owner in fee simple of the land in controversy. The conclusion reached is consistent with the decisions in Yates v. Yates, 104 Neb. 678, 178 N. W. 262; Myers v. Myers, 109 Neb. 230, 190 N. W. 491; Reuter v. Reuter, 116 Neb. 428, 218 N. W. 86."

The decree of the trial court is affirmed.