WILLLIAM ALBIN, BY GEORGE N. LA RUE, GUARDIAN, APPELLEE, v. CHARLES C. PARMELE ET AL., APPELLANTS.*

FILED JANUARY 21, 1904. No. 13,244.

Will: REMAINDER. A remainder in fee may be limited to the heirs at law of one to whom, by the same instrument, is given the precedent freehold.

APPEAL from the district court for Cass county: PAUL JESSEN, JUDGE. Decree modified.

Jesse L. Root and Samuel M. Chapman, for appellants.

Matthew Gering, contra.

AMES, C.

On the 20th day of October, 1894, Benjamin Albin died, a citizen of this state and a resident of Cass county, leaving a will, soon afterwards duly admitted to probate, and made of record in the office of the register of deeds of the county, and containing the following devise:

"I give, devise and bequeath to my son, William Albin, the east half of the northeast quarter of section 12, in

* Rehearing denied. See opinion, p. 746, post.

township 10, range 13, in Cass county, Nebraska, subject to the same conditions as that imposed upon the land hereinbefore devised to David, to have and to hold said land during the term of his natural life, and enjoy the use and proceeds thereof. The fee of the land to pass to his heirs, at his death or at any time before when he shall sell or encumber said land in any manner different than he shall receive it. The intention being to give him a life estate therein without the power to sell or dispose of it. Provided, if he shall have a surviving wife, at his death she shall in no event inherit less than one-third thereof, which is hereby devised to her, and if the statutes of descent in force at the time of his death shall give her a larger share than one-third, she shall have such share as the statutes shall give her, the remainder to be divided equally among his heirs. Provided further, that such share as his wife shall receive hereby shall by her be forfeited in the event of her again marrying, and the title thereto shall immediately vest in his brothers and sisters equally, or their issue by representation if dead, if he die without issue, but if he have issue, then said interest to be divided equally between his issue."

On the 26th day of September, 1901, William Albin, for a consideration of $1,000, executed to Charles C. Parmele a deed purporting to convey the fee of the premises above mentioned, and on the 22d day of January following Parmele, for a consideration of $4,000, executed a like deed to Laurena A. Carey. Both deeds were made of record at about the date of their execution, as was also a mortgage of the lands from Mrs. Carey to Parmele for $1,000 to secure the payment of part of her purchase money. Subsequently, this action was begun by Albin to obtain a decree setting aside the mortgage and both of the deeds, and quieting title in the lands in himself.

The first thing to be done is to ascertain, if possible, and unvexed by legal technicalities, the intent of the testator as expressed, or attempted so to be, by the clause of the will above quoted. What estate did William take under

the will? Section 53 of chapter 73 of the Compiled Statutes (Annotated Statutes, 10256), entitled "Real Estate," is the following:

"In the construction of every instrument creating or conveying, or authorizing or requiring the creation or conveyance of any real estate, or interest therein, it shall be the duty of the courts of justice to carry into effect the true interest (intent) of the parties, so far as such intent can be collected from the whole instrument, and so far as such intent is consistent with the rules of law."

It will be seen, with but slight reflection, that that which the statute expressly requires shall be consistent with the general rules of law, is not the construction of the instrument, but the intent of the parties. In a general sense, doubtless, the construction must also have a like consistency. That is to say, the language used in the instrument will be understood as intended to express a lawful purpose, rather than an unlawful one, and technical words and phrases will, in the absence of anything indicative of the contrary, be presumed to have been chosen for their technical meaning; but nevertheless in instruments, especially wills, which are often drawn by persons not "learned in the law," language such as is in common use will be presumed to have been employed in its ordinary and popular sense. It follows that if such language, manifestly so used, is inconsistent with the technical signification of particular words and phrases, the former ought, so far as it is necessary to effect the "true intent" of the parties or testator, to prevail over the latter. It can not be pretended that an intent to limit a remainder in fee to the heirs at law of one to whom is given the precedent freehold, is inconsistent with any general rule of law, because the authorities are united in saying that this very thing may be done. A condition that some of them prescribe, in case of the use of but one instrument, is that the grantor or devisor shall abstain from the use of the word "heirs," and adopt some, in most cases, practically equivalent expression, such as "issue," or "children," or "deced-

ents," or "next of kin," supplemented with more or less circumlocutory phraseology; or the desired end may be accomplished by creating a life estate by deed, and devising the reversion. In our opinion, the force of the statute is such that the employment of the tabooed word need not bereave either the language of the instrument or the court construing it of plain and ordinary common sense. Counsel for the defendant, with commendable learning and industry, have collected and cited a large number of authorities holding that the use of the word "heirs," in substantially the same connection as in the will under consideration, will defeat the emphatically expressed intent of a testator, and convert that which he plainly designed should be a life estate into an estate in fee. *Carpenter v. Van Olinder,* 127 Ill. 42; *McCray v. Lipp,* 35 Ind. 116; *King v. Utley,* 85 N. Car. 59.

It is not doubted that these decisions announce the correct rule of law in the jurisdictions in which they were rendered, but their introduction here would be in violent conflict with the above quoted statute, and with the established doctrine of this court that the first canon of construction of wills is to ascertain the intent of the testator. *Eiseley v. Lyman,* 23 Neb. 470; *Rupert v. Penner,* 35 Neb. 587; *Leavitt v. Bell,* 55 Neb. 57; *McCulloch v. Valentine,* 24 Neb. 215; *St. James Orphan Asylum v. Shelby,* 60 Neb. 796.

The contention that the doctrine contended for by counsel is requisite to prevent restraints upon alienation is of no force, because, as has already been noted, the same object may be effected in another way, and such restraints, within reasonable limits, have been held by this court to be valid and enforceable. *Arlington State Bank v. Paulsen,* 57 Neb. 717, 729; *Weller v. Noffsinger,* 57 Neb. 455. In the case last cited the court say:

"No rule of law is better settled, or more in accord with good sense, than that which requires the intention of the testator to be ascertained from a liberal interpretation and comprehensive view of all the provisions of the will. No

particular words, no conventional forms of expression, are necessary to enable one to make an effective testamentary disposition of his property. The court, without much regard to canons of construction, will place itself in the position of the testator, ascertain his will, and, if lawful, enforce it."

We do not wish to be understood as saying that the rule in Shelley's case is wholly abolished. It would, perhaps, be more correct to say that it exists in a restricted and qualified form, and will be enforced in those instances in which it is not in conflict with the otherwise expressed intention of the instrument; but the question is not now before the court and need not be decided. What the reason or origin of the rule may have been Mr. Washburn is unable to tell us. 2 Washburn, Real Property (6th ed.), sec. 1603. Apparently it grew, in some manner, out of the system and law of feudal tenures which, in this state, never existed.

Applying the above quoted language of Chief Justice SULLIVAN to the case at bar, the intent of the testator to devise to his son William a life estate only, without the power of alienation, can not be more unequivocally expressed than is done in the will itself, and as such intent is not inconsistent with any rule of law, general or other, the duty of the court to enforce it is not open to debate.

The conclusion thus reached dispenses with, as immaterial, the greater part of the pleadings and a bulky bill of exceptions touching the mental capacity of the plaintiff. The trial court found the plaintiff incapacitated and, for that reason, set aside the mortgage and conveyances, but adjudged to the defendant Parmele a lien upon the rents and revenues of the premises to reimburse him the moneys paid as a purchase price. The latter part of the decree can not be upheld. Parmele dealt with constructive, if not actual, notice of the record in the office of the register of deeds, as did also Mrs. Carey. His deed was equally as ineffectual to charge the premises with a lien, as to convey the title to them. It is not alleged that he was misled

or deceived by anything but his own want of caution. There is, therefore, nothing to call for the interposition of equity in his behalf. The same is true of Mrs. Carey, who testified that she bought in ignorance of the title and in sole reliance upon the covenants of her deed from Parmele. The plaintiff, by a guardian, brought the case here by a petition in error, and the defendants appealed. Both proceedings present the same question, and by consent of counsel the former is treated as having been merged in the latter. The decree quiets the title in the plaintiff and his heirs. The heirs are not before the court, and have no estate vested in possession, and, for aught we know, may be yet unborn, and, besides, the will contemplates a contingent remainder in at least one-third, possibly the whole, of the premises in the wife of the plaintiff, with a limitation over in the nature of an executory devise in favor of his brothers and sisters.

It is recommended that the decree be so modified as to cancel, set aside and hold for naught, both of the deeds so far as they purport to affect title or right of possession, but without impairing their covenants, and the mortgage so far as it purports to be a lien upon the premises, but without affecting the mortgage debt, and that as against all said instruments the plaintiff be quieted in the title and possession of the life estate devised to him by the will.

HASTINGS and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the decree be so modified as to concel, set aside and hold for naught both of the deeds so far as they purport to affect title or right of possession, but without impairing their covenants, and the mortgage so far as it purports to be a lien upon the premises, but without affecting the mortgage debt, and that as against all said instruments the plaintiff be quieted in the title and possession of the life estate devised to him by the will.

JUDGMENT ACCORDINGLY.

The following opinion on motion for rehearing was filed
May 5, 1904. *Motion denied:*

Conveyance: SUIT TO SET ASIDE: DECREE FOR POSSESSION. In a suit
in equity to set aside a conveyance of real estate, where the right
of possession is in issue and depends upon principles of equity
that must necessarily be determined by the court, it is the duty
of the court to determine the right of possession and, if all parties
interested are before the court, to put the party who is entitled
thereto in possession.

SEDGWICK, J.

Upon this motion for rehearing the appellants, who
were defendants below, insist that the court had no juris-
diction to "adjudge the right of possession of the real es-
tate in controversy." They cite *Schumacher v. Crane-
Churchill Co.*, 66 Neb. 440, as authority for the proposition
that, "Appellant Carey, being in possession of the real es-
tate, had the absolute right to have that right passed on by
a jury, should she so demand"; but that case is not au-
thority for plaintiff's proposition. It was decided in that
case that one who had commenced an action in ejectment
for the possession of real estate, could not be deprived of
a jury trial by an answer setting up equitable defenses.
This being a case in equity, where the right to the posses-
sion of the real estate involved depends upon principles
of equity that must necessarily be determined by the court,
it is the duty of the court to determine all the issues in-
cluding the right of possession.

It being insisted that the defendant Carey was in pos-
session of the premises under a lease which does not appear
to have been adjudicated below, and evidence upon ques-
tions affecting the right of possession having been ex-
cluded by the trial court, we think that the judgment of
this court should not determine that question; and, to re-
move any doubt or uncertainty in that regard, the judg-
ment heretofore entered in this court is modified so as to
remand the cause to the district court with instructions

to determine the right of possession in accordance with the opinion and judgment of this court.

The motion for rehearing is overruled.

MOTION DENIED.