THEODORE R. DAVIS ET AL., APPELLEES, v. RUBY L. DAVIS, APPELLANT.

FILED NOVEMBER 17, 1921. No. 21668.

1. **Remainders:** SUIT TO QUIET TITLE. Under the statutes of Nebraska remaindermen may maintain a suit to quiet title before the termination of the life estate.

2. **Wills:** CONSTRUCTION: REMAINDERS. The law favors the early vesting of estates, and in construing a will containing a devise of a life estate and a devise of the remainder, the inference of a vested remainder is stronger than the inference of a contingent remainder, if the meaning of the testator is obscure in this respect.

3. ———: ———: ———. A will devising a life estate to the wife of testator, his property at her death to be divided equally among his four children, and providing, in case of the death of one or more of them without heirs, that his property shall descend in equal shares to the survivors, construed to devise a vested remainder to the children living at the death of testator.

4. **Descent:** WIDOWS. For the purposes of the Nebraska statutes of descent a widow may be an heir of her deceased husband.

APPEAL from the district court for Cass county: JAMES T. BEGLEY, JUDGE. *Reversed, with directions.*

*Byron Clark, Jesse L. Root* and *W. A. Robertson,* for appellant.

*W. T. Thompson, Grant G. Martin* and *C. A. Rawls, contra.*

Heard before MORRISSEY, C.J., ROSE, LETTON, DEAN, ALDRICH, DAY and FLANSBURG, JJ.

ROSE, J.

This is a suit to construe a will and to quiet in plain-

tiffs title to their interests in devised lands consisting of several tracts in Cass county. The part of the will in controversy reads:

"I give and bequeath to my wife Barbara Davis, all of my property, both personal and real, wherever found, during her lifetime, and at her death my property is to be divided equal between my four children, Theodore R. Davis, son; Daisey R. Schroeder, formerly Daisey R. Davis; Reine L. Poore, formerly Reine L. Davis, my two daughters, and Philip S. Davis, son. In case one or more of my children should die without heirs, then and in. that case my property is to descend in equal shares to my surviving children."

John H. Davis was the testator. His will was executed June 4, 1902, and he died March 16, 1907. The will was probated April 12, 1907. All of the children are living except Philip S. Davis. The son Theodore R. Davis was married in 1902, but is childless. Both daughters were married and have children. The son Philip S. Davis was married September 2, 1916, and died intestate and childless November 17, 1919, after the death of his father. The widow of testator is still living. The three living children of testator are the plaintiffs and claim title to all of the devised lands, subject to the life estate of their. mother. An action in this form before the termination of the life estate is authorized by statute. Rev. St. 1913, secs. 6266, 6268; *Hobson v. Huxtable,* 79 Neb. 334.

Ruby L. Davis, widow of testator's deceased son, is one of the defendants, and, subject to the life estate mentioned, claims an undivided one-eighth interest in the devised lands, being one-half of the one-fourth share of her deceased husband under the will of his father. She claims this as an heir of her husband and she prays for a decree quieting her title as against plaintiffs. Testator's widow is the only other defendant. She disclaims any interest in the devised lands except her life estate. From a decree granting to plaintiffs the equitable relief sought by them, defendant Ruby L. Davis has appealed.

To sustain the decree that Ruby L. Davis, widow of the deceased son of testator, has no interest in the devised lands, and that as against her the title of plaintiffs is quieted in them, they argue the following propositions: At the death of testator no indefeasible estate vested in any of his four children named in the will; their estate is a base or determinable fee in each, passing by executory devise to the survivors of any dying without heirs; testator's son, Philip S. Davis, died without heirs within the meaning of the will, and therefore his widow, Ruby L. Davis, has no interest in the devised lands.

On the other hand, it is contended by Ruby L. Davis that the decree is erroneous because, as it is argued, the will devised two estates, both vesting at the death of testator; one being the life estate of testator's widow, and the other the vested remainder with an undivided fourth to each of testator's four children, all living when the will was probated. In this connection it is further argued that the widow of testator's deceased son is an heir of the latter within the meaning of the will and of the statutes of descent.

In discussing the questions presented, both sides have invoked the wisdom of sages and each of the divergent views seems to be supported by precedents cited, but the difficult task of determining the intention of the testator remains.

The terms, "base or determinable fee," "executory devise," "vested remainder," "estate in remainder," and "contingent remainder," when used in construing wills and in describing interests in devised property, are defined in *Wilkins v. Rowan,* p. 180, *post,* and the repeating of the definitions here is unnecessary.

For the purposes of the will testator divided his property into two estates. One was the life estate which he willed to his wife. It is definitely described and it vested in the widow of the testator upon his death, though that event was not specifically mentioned in the will as the date for the vesting of her title. After the devising of

the life estate, the definite estate known in law as the "remainder" was subject to testamentary action, and it is clear that in some form it was intended for the four children in equal shares, if living.

Following the devise of the life estate to the wife of testator, the provision that "at her death my property is to be divided equal between my four children" does not necessarily mean that the two estates shall not vest at the same time or that the remainder shall not vest until the death of testator's wife. When the entire will is considered, the phrase "at her death" may fairly be construed to refer to the time when the enjoyment of the estate in remainder begins. There are precedents and sound reasons for this interpretation. The will was made in contemplation of death. Testator meant to dispose of all of his property by will, and did not mean to allow any part of it to descend to his children under the statutes of descent. He included it all in the provisions of his will. His devises were in a form to make the changing of his will unnecessary in the event of his surviving any of his children. Having provided for the vesting of the life estate at the death of testator, provision for the vesting of the remainder in his children at the same time would be a natural wish under ordinary circumstances. He did not say that the estate in remainder shall be divided among his children at his wife's death, but he did say that his "property" shall then be thus divided. Such a division of the "property" cannot be made at an earlier date or before the termination of the life estate. The concluding sentence of the provisions quoted follows:

"In case one or more of my children should die without heirs, then and in that case my property is to descend in equal shares to my surviving children."

The expression, "die without heirs," should be construed to refer to the death of a devisee during the life of testator. The policy of the law is to favor the early vesting of estates. The inference of a vested remainder is stronger than the inference of a contingent remainder,

if the meaning of testator is obscure. Testator obviously meant to leave all of his children on the same footing at the time of his death. He did not, therefore, contemplate a contingency in which a child having heirs would have no interest in the devised property, if such child should die after the death of testator and before the death of the latter's widow, and that the heirs of another child dying a few days later, after the death of testator's widow, would share in the estate. A vested remainder would avoid such a discrimination.

The expression, "die without heirs," was originally written "die without children," but before the will was executed the word "children" was partially erased, and over the partial erasure the word "heirs" was inserted in the handwriting of W. H. Pool, the draftsman.

Considering the entire will from the standpoint of the testator in connection with the surrounding circumstances, the conclusion is that Philip S. Davis acquired at the death of his father an undivided one-fourth of a vested remainder in the devised lands, and that one-half of his interest, or an undivided one-eighth of the estate in remainder, descended to Ruby L. Davis under the statutes of Nebraska as the widow and the heir of her deceased husband. Each of the cases cited from this court by plaintiffs to sustain a contrary view seems to have some feature distinguishing it from the present case.

The judgment of the district court is reversed, with an instruction to grant to defendant Ruby L. Davis the equitable relief sought in her answer.

REVERSED.