IN RE ESTATE OF LOUIS HANSON.
JOHN M. HANSON ET AL., EXECUTORS AND TRUSTEES, APPELLEES, V. DOROTHY M. HARKSON ET AL., APPELLEES: HENRY W. HARKSON ET AL., APPELLANTS.

FILED MARCH 16, 1929. No. 25914.

*Burkett, Wilson, Brown & Wilson* and *Hall, Cline & Williams,* for appellants.

*M. L. Easterday* and *G. Porter Putnam, Jr., contra.*

Heard before GOSS, C. J., GOOD, THOMPSON and DAY, JJ., and L. S. HASTINGS and REDICK, District Judges.

GOSS, C. J.

This is an appeal from the decree of the district court construing a will with particular relation to the word "heirs" therein.

The testator, Louis Hanson, died July 29, 1916. His will was executed June 28, 1915. Its first paragraph provided for the payment of funeral charges, administration of the estate and debts; the second gave to Ane Marie Hanson, his wife, the life income; the third provided a gift to the family church; the fifth appointed his two sons executors; the fourth paragraph, construction of which is asked, reads as follows:

"I give, devise and bequeath to my six children, hereinafter named, share and share alike all my estate, real, personal or mixed, remaining at the death of my said wife, Ane Marie Hanson, after the payment as directed in paragraph III, and desire that they divide the same equally between themselves without sale or partition suit. In case, for any reason, the estate cannot be divided by agreement into six equal shares and conveyed to each other by the legatees, I hereby authorize and empower my said executors, or survivor of them, to divide the estate into six equal parts and execute and deliver good and sufficient conveyance to each one of said children or the heirs of any deceased child one of such parts. The names of all my children are as follows: Callie Hanson, Hans D. Hanson, Ernest Hanson, John M. Hanson, Maura M. Hanson and Eliza M. Harkson. In case of the death of any of my said children prior to the death of my said wife, the share of such one shall go to his or her heirs."

Ane Marie Hanson, the widow of testator, died May 18, 1925.

Eliza M. Harkson, a daughter, died June 10, 1920 (after her father and before the death of his widow), leaving surviving her three children, Dorothy, Elaine and Ruby, and Henry W. Harkson, her husband. He claims an undivided one-eighteenth of the entire estate of Louis Hanson, being one-third part of the one-sixth part that was devised to Eliza M. Harkson, whose children, through their guardian *ad litem,* G. Porter Putman, Jr., claim that their father took no interest in the estate.

The Multnomah State Bank is interested as the holder

of a mortgage on the undivided interest of Henry W. Harkson.

The county court held in favor of the children of Eliza M. Harkson and that their father was not entitled to take either as the husband or as her heir.

On appeal the district court held:

"The technical definition of 'heirs' is those who would take in case of the demise of a person intestate, those to whom the law distributes in the absence of a will; and technically this would include Henry W. Harkson the surviving spouse of Eliza Hanson Harkson. It would seem, therefore, if the controversy is to be decided from the four corners of the will alone, without testimony as to the disposition of the testator towards Harkson at the time that the will was made and without testimony as to the surrounding circumstances, that there is no escape from the proposition that Henry W. Harkson is entitled to take under the will as well as his three children."

But the district court, over objection, received oral testimony relating to testator's feelings toward Henry W. Harkson, and relying thereon to modify the "technical definition of 'heirs'" decreed "that that portion of testator's property which would have gone to Eliza Hanson Harkson, had she been living at the time of the death of her mother, goes to, and is distributed to, her children, Dorothy, Elaine and Ruby Harkson, and not in any part to Henry W. Harkson."

From this decree Henry W. Harkson and the Multnomah State Bank have appealed.

Appellants assign the following errors:

1. That the court erred in holding that a vested remainder did not pass to testator's daughter, Eliza M. Harkson, upon his death.

2. That the court erred in holding that Henry W. Harkson was not entitled to an interest in the lands of the testator as the surviving spouse and as an "heir" of Eliza M. Harkson.

3. That the court erred in receiving and acting upon

oral testimony as to what the testator meant in his will by the word "heirs."

To the objective perception the apparent and external effect of this will was to cast a life estate upon the widow of the testator and the remainder upon his children, if living, or upon their respective heirs if any of the children were dead. As we have shown by the quotation from the decree of the district court, this is precisely what the court found "from the four corners of the will alone."

The testator died July 29, 1916. His widow entered into the possession and enjoyed the particular or life estate until May 18, 1925, when she died. Thereupon the remainder, attached to the life estate, ripened into a fee simple title, that is, into a freehold estate of inheritance, free from conditions and of indefinite duration. Who took that title so far as the share of Eliza M. Harkson, the deceased daughter, is concerned is the subject of inquiry here. Did it go to her children only or did her husband, as an heir, share it with the children?

One of the points involved and debated by the parties is whether the will created a vested remainder or whether the remainder was contingent. If the remainder vested in Eliza M. Harkson on the death of the testator, then her husband would be entitled to take under her, nothing appearing in the will to show a contrary intention on the part of the testator.

*Davis v. Davis,* 107 Neb. 70, was a suit to construe a will and to quiet title to interests in devised lands. It was brought by remaindermen claiming that their interests vested on the death of testator. The will gave a life estate to the widow, who was still living, and equal remainders "at her death" to four children. It provided, if any of the children should "die without heirs," the surviving children should take. After the death of the testator, one son died intestate and childless but leaving a widow. She claimed, subject to the life estate of testator's widow, an undivided one-eighth interest in the devised lands, being one-half of the one-fourth share of her deceased husband under

the will of his father. We held that, when the entire will is considered, the phrase "at her death" may fairly be construed to refer to the time when the enjoyment of the estate in remainder begins; that the expression "die without heirs" should be construed to refer to the death of a devisee during the life of the testator; that the policy of the law favors early vesting of estates and that the inference of a vested remainder is stronger than the inference of a contingent remainder, if the meaning of the testator is obscure; and that the deceased son "acquired at the death of his father an undivided one-fourth of a vested remainder in the devised lands, and that one-half of his interest, or an undivided one-eighth of the estate in remainder, descended to Ruby L. Davis under the statutes of Nebraska as the widow and the heir of her deceased husband."

The case just analyzed referred for definitions to *Wilkins v. Rowan,* 107 Neb. 180, which was decided on the same day. The facts are for our purpose adequately stated in a point of the syllabus which reads as follows:

"A devise of land to James for life, and at his death to the issue of his body, if he shall leave any such surviving him, but, if he shall not, then said land to go to the heirs at law of testator, *held,* an estate in remainder, and not an executory devise to the issue of James, and that B. and D., sons of James, took a vested estate in remainder at the death of testator, subject to open and let in afterborn issue."

The opinion in the foregoing case quoted *Archer v. Jacobs,* 125 Ia. 467 (which was also cited with approval in *Shackley v. Homer,* 87 Neb. 146, 177) as follows:

"Where a will devised one-fourth of testator's estate to his daughter for life, and upon her death the same to go, share and share alike, to her children or grandchildren, but, if she should die leaving neither children nor grandchildren, then to testator's son or his children, the daughter upon the death of the testator took a life estate, and her children then in being took a vested remainder,

although such remainder was subject to open and let in afterborn children, and although there was no certainty that such children would survive their mother or leave surviving issue."

From the foregoing we derive the conclusion that a will devising a life estate to the wife of testator, his property at her death to be divided equally among his six children, and providing, in case of the death of any of them prior to the death of testator's wife, that the share of such one shall go to his or her heirs, construed to devise a vested remainder to the children living at the death of the testator.

*Case v. Haggarty,* 91 Neb. 746, is cited as indicative of a holding contrary to what we have expressed here. There a mortgage upon an undivided one-third of the estate, made by a daughter, who died before the life estate of her mother terminated, was held not a lien and not subject to foreclosure as against the surviving children of the daughter. The will provided that, in case of the death of the daughter before the mother, her portion "should descend to her children, share and share alike." The opinion refers the word "descend" to the "enjoyment of the estate." While this case was not cited in *Davis v. Davis,* 107 Neb. 70, a somewhat similar clause was there discussed in these words: "Following the devise of the life estate to the wife of testator, the provision that 'at her death my property is to be divided equal between my four children' does not necessarily mean that the two estates shall not vest at the same time or that the remainder shall not vest until the death of testator's wife. When the entire will is considered, the phrase 'at her death' may fairly be construed to refer to the time when the enjoyment of the estate in remainder begins. There are precedents and sound reasons for this interpretation." In *Wilkins v. Rowan,* 107 Neb. 180, 190, 191, the *Haggarty* case was cited, quoted and discussed at some length, ending thus: "The rule is well established in other jurisdictions that an estate in remainder may vest in a devisee subject

to defeasance. This court has heretofore announced its adherence to that doctrine, and we shall hold in the instant case that Benjamin H. Rowan and David R. Rowan took a vested estate, defeasible or indefeasible, according to the intention of the testator." While the language in *Case v. Haggarty* is not as clear as we might wish it for the purposes of the present case, we are of the opinion that the author of it had in mind the same idea of the defeasibility of a vested remainder that was more fully expressed in the later case from which we have quoted.

We further held in *Davis v. Davis,* 107 Neb. 70, where the meaning of the word "heir" was the subject of definition, that "for the purposes of the Nebraska statutes of descent a widow may be an heir of her deceased husband." Conversely, it would follow that, under the statutes of descent, a surviving husband is the heir of his deceased wife. Comp. St. 1922, section 1220, as to real estate, and section 1222, as to personal estate. These statutes have been in force since 1907, at which time the estates of dower and curtesy were abolished (section 1223), and it was provided that the right of either spouse to inherit real estate from the other might be barred by deed or judicial sale (section 1224), or by antenuptial contract (section 1225). On this point of the surviving spouse being an "heir," we also note *In re Estate of Grobe,* 101 Neb. 786, and *Moore v. Markel,* 112 Neb. 743, which cites the *Grobe* case and says: "The interest which a widow takes in the real estate of her husband on his death is more than that of an heir." As the opinion in the *Moore* case explains carefully, all this statement means is that an ordinary heir may be barred of a prospective interest in real estate by a deed or contract made by an ancestor, but a widow's heirship of an interest in real estate of which her husband was seised during coverture, where both reside in Nebraska, cannot be so barred by her husband acting alone. She inherited in that case one-half of the real property, and the title of that interest vested in her on his death irrespective of the contract he had made alone to convey the title

to the whole interest. In the *Grobe* case the interest which the widow took in the real estate of her deceased husband was "more than that of an heir at law" in that the homestead was first awarded and then her share as an heir was set off to her. So, under the substantive law existing in Nebraska since 1907, either spouse may be an heir of the other. Unless excluded by unambiguous words or by clear implication from the language used in a will, the description therein of "heirs" includes a surviving spouse as well as a surviving child or surviving children.

From the preceding discussion it has developed that there was no legal ambiguity or obscurity in the words of the will. It must be accepted as fundamental that the intention of the maker of a will is to be gathered from the language of the will; that, in construing wills, courts are not to seek otherwise what the testator meant, if it can be discovered from his will what his words mean; that oral testimony cannot be resorted to in order to explain the intent of the use of a word the meaning of which, in the circumstances, is not only fixed in law but in fact; and that the word "heirs" had at the time of the making of the will in question, had long prior thereto, and still has, a certain and definite meaning. It follows that the trial court erred in receiving and following oral testimony as to the intention of the testator that the word "heirs" did not include one who was an heir.

For the reasons stated, the judgment of the district court is reversed and the cause is remanded, with instructions to enter a decree for the appellants in conformity with this opinion.

REVERSED.

GOOD, J., dissenting.

To the writer it appears that the construction given to the will of Louis Hanson in the majority opinion is unsound. In this jurisdiction the rule is well established that, in interpreting a will, the court will endeavor to place itself in the position of the testator and ascertain, from all the provisions of the will, his intention and, if lawful, give

effect thereto. The intent should be ascertained from a consideration of the whole will and all of its provisions, and not from any isolated or separate paragraph.

It will be conceded that the first sentence of paragraph 4 of the will of Louis Hanson, standing alone, would be sufficient to vest in the children of Louis Hanson the title to his real estate, subject only to the life estate of his widow, as provided in the preceding paragraph. An examination of the other provisions, however, clearly shows, to my mind, that it was the intention of the testator that his children should take the remainder only in event they survived their mother, and, if they did not survive their mother, it was as clearly his intention that the heirs of any child predeceasing their mother should take from him the share that would have otherwise gone to such child of the testator. The last sentence of said paragraph 4 is as follows: "In case of the death of any of my said children prior to the death of my said wife, the share of such one shall go to his or her heirs." If the construction placed upon the will by the majority opinion is sound, then the sentence would have no meaning and no effect. It will not be presumed that the testator put in this provision as a mere idle ceremony. The presumption is that he had a definite purpose in view in so doing. If, subject to the life estate of his widow, the remainder was vested in his children at his death, then he would have nothing that he could give to the heirs of any of his children who did not survive their mother. Louis Hanson doubtless fully realized that his children could not go into the possession or enjoyment of the remainder until after the death of their mother. He made provisions that would prevent the sale of the real estate until after the death of his wife. He further made provision that his executors had power to mortgage the real estate in the event that it was necessary for the proper support of his widow. If the remainder was vested in his children on his death, by what right or authority could his executors incumber the same by a mortgage? It is clear that it was the intention of the

testator that his executors should have power to incumber the real estate for the benefit of his widow, if necessary, and this intent and purpose was laudable and lawful; yet, this provision of the will would be nugatory if the children of Louis Hanson took a vested remainder, subject only to the life estate of their mother, as held by the majority opinion. As I view it, what Louis Hanson did was to give a life estate to his widow and create a contingent remainder which, subject to any incumbrance that might be placed thereon by the executors, would go direct from the testator to either his children or to their heirs, as the case might be. A contingent remainder is created where it is uncertain whether one of two persons or classes of persons will take, and the right of the one or the other to take depends upon the happening of some event in the future. In the instant case, it was uncertain at the death of the testator whether Mrs. Harkson or her heirs would take. It would depend on the contingency whether or not she survived her mother. The event which determined this was the death of Mrs. Harkson prior to that of her mother. By the happening of that event, it made the heirs of Mrs. Harkson the devisees of Louis Hanson.

In the strict sense of the word, one spouse is ordinarily not the heir of the other. The only case where one spouse may be properly said to be an heir of the other is where the first spouse to die leaves no known kindred capable of inheriting. Under such circumstances, the surviving spouse inherits that part of decedent's estate which would have gone to his next of kin, had he left such surviving capable of taking. The interest which the husband takes in the realty of his deceased wife is an inchoate right which is created by statute, and which is vested in him during the lifetime of the wife, but the right to the use and enjoyment of the interest so received becomes perfect only upon her death.

In my opinion, Henry W. Harkson was entitled to no part of or interest in the estate of Louis Hanson. All the share

that would have gone to Mrs. Harkson, had she survived her mother, was vested in her children who survived her.

Note—See Wills, 40 Cyc. 1440 n. 67, 1463 n. 33, 1650 n. 81, 1666 n. 16, 1675 n. 63.