WILLIAM ELROY SALMONS, APPELLANT, V. JAMES KING SALMONS, APPELLEE: MERNA ELIZABETH SALMONS, APPELLANT.

5 N. W. (2d) 123

FILED JULY 31, 1942. No. 31422.

*Fay H. Pollock* and *Ted C. Tow,* for appellants.

*T. L. Grady, contra.*

Heard before ROSE, PAINE, CARTER, MESSMORE and YEAGER, JJ.

YEAGER, J.

This is an action in equity instituted by William Elroy Salmons, plaintiff and appellant, against James King Salmons, a minor, defendant and appellee, and Merna Elizabeth Salmons, defendant and appellant. There are two causes of action. The purpose of the first cause of action is to construe a devise in the will of Harriet Jane Salmons, mother of plaintiff, dated December 31, 1910, and the second is to construe a devise in the will of William B. Salmons, father of the plaintiff, dated January 4, 1912, with a codicil dated August 1, 1923.

The devise which is the basis of the first cause of action is the following:

"Third. I give and devise to my beloved son, Elroy Salmons, so long as he shall live, the west half of the southeast quarter (SE 1/4) of section nine (9) in township twenty-two north of range three (3) east of the 6th P. M. in Stan-

ton county, Nebraska, upon the express condition, that he shall not in any manner encumber said land, or the title thereto, by any mortgage, or other voluntary lien against the same, and in the event my said legatee shall in violation of this condition attempt to encumber, or charge said premises with a mortgage, or other voluntary lien, then all right, title, claim or interest hereby vested in said Elroy Salmons shall at once cease and determine.

"Fourth. Subject to the foregoing provisions, and to take effect upon the termination of the life estate of said Elroy Salmons, either by his death, or by an attempt on his part to create a voluntary lien or charge against said premises, or the title thereto, I give and devise and bequeath to the lawful issue or descendants of said Elroy Salmons the said west half of the southeast quarter of section nine (9) in township twenty-two (22) north of range three east of the 6th P. M. in Stanton county Nebraska. It being my intention to designate by the terms lawful issue or descendants, the lawful issue or descendants alive or in being, upon the termination of the life estate of said Elroy Salmons, by death or otherwise. And if upon the termination of said life estate of said Elroy Salmons, he have no lawful issue or descendants then in being, I direct that the fee simple title of said premises, shall thereupon vest in my beloved husband William Salmons and in his heirs and assigns forever."

The devise which is the basis of the second cause of action is the following:

"Fourth. I give, devise and bequeath all the residue of my real estate of whatsoever kind and nature, * * * to my beloved wife, Harriet Jane Salmons, to be used and enjoyed by her during the term of her natural life and from and immediately after her decease, I give and devise the aforesaid lands to my beloved son, William Elroy Salmons, to be used and enjoyed during the term of his natural life and from and immediately after his death, I give and devise the same to the sons and daughters, if any, of my said son William Elroy Salmons, who may be alive at the time of his death and to them and their heirs forever. Intending hereby to

vest in my said beloved wife the exclusive life use only of the property described in this paragraph, and that upon her death a life estate only in said real estate shall be vested in my beloved son, William Elroy Salmons, and after the death of my son, William Elroy Salmons, the fee simple title shall thereupon vest in the lawful heirs of said William Elroy Salmons, share and share alike as tenants in common."

The plaintiff contends that by reason of the language of the devise in his mother's will, quoted herein, he is, under the rule in Shelley's case, the owner in fee simple of the land described and is not merely the life tenant.

He also contends that by reason of the quoted language of the devise in the will of his father he is, under the same rule, the owner in fee simple of the land referred to which comprises certain lots in Stanton, Nebraska, and 713¾ acres of land in Stanton county, Nebraska, and likewise that he is not merely the life tenant thereof.

Merna Elizabeth Salmons is the wife of plaintiff. She, being incompetent, by guardian *ad litem* filed answer and joined in the prayer that plaintiff be decreed to own all of the real estate in question in fee simple. She is an appellant here with the plaintiff.

James King Salmons, the other defendant, and appellee, is the minor son of the plaintiff. He is represented by T. L. Grady, guardian *ad litem*.

On the first cause of action the trial court found in favor of the plaintiff and decreed accordingly.

On the second cause of action the finding was in favor of the defendant James King Salmons, and decree was entered in accordance with the finding.

From the decree on the second cause of action the plaintiff and the defendant Merna Elizabeth Salmons appealed. From the decree on the first cause of action the guardian *ad litem* for the minor defendant cross-appealed.

In the main both of the causes of action depend upon the questions of whether the words used in the one instance by Harriet Jane Salmons, testatrix, and in the other by William B. Salmons, testator, were words of limitation rather than words of purchase.

If, in each instance, they were words of purchase, then the devises must be upheld and the plaintiff declared to be a life tenant rather than owner in fee simple. If, on the other hand, they are words of limitation, then they run afoul of the rule in Shelley's case, which is a rule of property in this state, and in such instance the plaintiff must be decreed to be owner in fee simple of the real estate in question. *Myers v. Myers,* 109 Neb. 230, 190 N. W. 491; *Sutphen v. Joslyn,* 111 Neb. 777, 198 N. W. 164; *O'Shea v. Zessin,* 138 Neb. 380, 293 N. W. 240.

The parties are in substantial accord on the proposition that the causes of action must turn on questions of whether or not, by the words used, the testatrix and testator, respectively, included the full line of heirs of William Elroy Salmons in the words employed to set forth the devises.

For the purpose of determining these questions it becomes necessary to ascertain the intentions of the testatrix and the testator herein by the established rules of construction. *Yates v. Yates,* 104 Neb. 678, 178 N. W. 262; *Myers v. Myers, supra.*

In determining the intention of a testator it is the duty of the court to examine the four corners of the will and give consideration to every provision therein contained, giving the words used their commonly and generally accepted meaning, and to indulge the presumption that the testator understood the meaning of the words used. *Myers v. Myers, supra; Seybert v. Seybert,* 118 Neb. 246, 224 N. W. 1; *In re Estate of Hart,* 137 Neb. 843, 291 N. W. 502; *In re Estate of Pfost,* 139 Neb. 784, 298 N. W. 739.

With these rules of law as guides, for our further discussion it becomes necessary to determine whether or not the words used in the respective devises are of limitation or of purchase.

The devises are not couched in the same terms; therefore, it becomes necessary to deal with them separately. We will take them in the order presented in the district court, and deal first with the devise by Harriet Jane Salmons, mother of the plaintiff.

The particular words of this devise requiring interpretation are the following: "Subject to the foregoing provisions, and to take effect upon the termination of the life estate of said Elroy Salmons, * * * I give and devise and bequeath to the lawful issue or descendants of said Elroy Salmons * * *." Also the following: " * * * lawful issue or descendants alive or in being * * * ." Elroy Salmons is the same person who is described throughout this case as William Elroy Salmons.

In the case of *Albin v. Parmele,* 70 Neb. 740, 98 N. W. 29, the will carried a limitation over after the expiration of the life estate to the "heirs" otherwise described as "issue" of the life tenant. The terms appear to have been used interchangeably and synonymously. The word "issue" was construed to be a word of purchase and "heir" was used *descriptio personæ* to designate the issue or children of the life tenant. In that light the rule in Shelley's case was held not to apply. This holding met with approval in *Yates v. Yates, supra.*

Can it be said that the words "lawful issue or descendants alive or in being" are less limiting than the word "issue" when used interchangeably and synonymously with the word "heir"? Clearly the testatrix here meant the living issue of William Elroy Salmons, which clearly excluded other classes who were capable of taking as heirs. These were not all of those who would take by descent from William Elroy Salmons.

For the rule in Shelley's case to have application it is necessary that the words used shall indicate an intention that the full line of heirs of the ancestor shall take at the time of his death, and by heirs is meant all those of his kin who survive him and are capable of inheriting at the time of his death, including lineal descendants and collateral heirs. 24 R. C. L. 892, sec. 4.

By the language of this will the children of a child of William Elroy Salmons are excluded as a class as well as is his widow.

By sections 30-101 and 30-103, Comp. St. 1929, which became effective in 1907 (Laws 1907, ch. 49, secs. 1, 3), the

surviving spouse became an heir as to both the personal property and real estate of the deceased husband or wife. *In re Estate of Hanson,* 118 Neb. 208, 224 N. W. 2; *In re Estate of Rosenbery,* 132 Neb. 883, 273 N. W. 805.

In the opinion in the case of *In re Estate of Hanson, supra,* this court said: "So, under the substantive law existing in Nebraska since 1907, either spouse may be an heir of the other. Unless excluded by unambiguous words or by clear implication from the language used in a will, the description therein of 'heirs' includes a surviving spouse as well as a surviving child or surviving children."

This language was quoted with approval in *In re Estate of Rosenbery, supra.* There Rosenbery devised a portion of his estate to his son. The will provided that in case of death of the son that portion of the estate should go to the heirs of the son. The son predeceased the testator. It was held that the widow of the son was entitled to take as an heir.

The conclusion that we reach then is that the words upon which our interpretation of the devise in the will of Harriet Jane Salmons is based are words of purchase and not of limitation, and that as to the first cause of action the rule in Shelley's case has no application.

As to the estate given to the wife in the quoted portion of the will which is the basis of the second cause of action we need not concern ourselves here since the wife died before the testator. We need only concern ourselves with the estate devised to the son.

The devise here by its terms is to the plaintiff for life and then "to the sons and daughters, if any, of my said son William Elroy Salmons, who may be alive at the time of his death and to them and their heirs forever." This declaration is qualified in the same paragraph of the will as to the takers of the remainder as follows: "Intending * * * after the death of my son, William Elroy Salmons, the fee simple title shall thereupon vest in the lawful heirs of said William Elroy Salmons, share and share alike as tenants in common."

The same rules of law and of interpretation apply to this

second cause of action as were applicable to the first, hence it becomes necessary only to determine the question of whether these are words of limitation or of purchase, or in other words whether or not they limit the takers to less than the full line of heirs of William Elroy Salmons.

The devise in the first instance clearly is a limitation upon the line, since living sons and daughters only are named. If the explanatory phrase were to be taken alone the words could be construed to include the full line of heirs. However, we cannot reject the one and accept the other without doing violence to the intention of the testator. We must, if possible, ascertain the intent and construe the devise in such manner as to give effect to the intent of the testator.

It is obvious that he intended that the lands in question should go in remainder to the living children of his son, share and share alike, in fee simple. It is equally obvious that he intended that they should go to no one else. It seems clear that he had the intention in his explanatory sentence by the use of the words "lawful heirs" to make this intention clear.

However, for another reason the words of this devise must be considered as words of purchase and not of limitation.

Heretofore in this opinion, attention has been called to a pronouncement of this court that where two words are used interchangeably or synonymously, one of which indicates limitation and the other purchase, the one which indicates purchase must be accepted, and the one indicating limitation must be considered as *descriptio personæ*. *Albin v. Parmele, supra*. The same reasoning would apply to groups of words. Here we find two groups of words, one of which taken alone would indicate purchase and the other limitation. Taken together they cannot be construed to pass fee simple title under the rule in Shelley's case. If they are considered as having been used synonymously, as seems to be the intent of the testator, those which indicate purchase must be accepted, and those which if taken alone would indicate limitation must be considered as *descriptio personæ*.

We hold, therefore, that the words which are the basis of the first cause of action and also the second cause of action are words of purchase and not of limitation.

The decree of the district court on the first cause of action is reversed, and as to the second cause of action it is affirmed.

AFFIRMED IN PART AND REVERSED IN PART.

ROSE, J. I do not concur in the opinion that the rule in the Shelley case is law in Nebraska.

The following opinion on motion for rehearing was filed March 19, 1943.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER and CHAPPELL, JJ.

YEAGER, J.

This is an opinion on rehearing. The original opinion is reported *ante*, p. 66, 5 N. W. (2d) 123. The statement of facts is contained therein and since there is no factual controversy a new statement is not required here.

The motion for rehearing suggests proper rules of law

were not applied in the interpretation of the two wills and particularly in the ascertainment of the intent of the testator with regard to the will which is the basis of the second cause of action.

To this subject of intent we will first direct our attention. The intent of the testator up to a certain point is plain and unequivocal. He never intended to create an estate in William Elroy Salmons other than a life estate. This certainly defeats completely the claim that the testator intended by his explanatory statement, "Intending hereby to vest in my said beloved wife the exclusive life use only of the property described in this paragraph, and that upon her death a life estate only in said real estate shall be vested in my beloved son, William Elroy Salmons, and after the death of my son, William Elroy Salmons, the fee simple title shall thereupon vest in the lawful heirs of said William Elroy Salmons, share and share alike as tenants in common," to give to William Elroy Salmons a fee simple title to the real estate in question. If it be concluded that William Elroy Salmons shall take a fee simple title it cannot be because of the intent of the testator but in spite of it. If he takes a fee simple title he takes not by the intent of the testator but by arbitrary rule of law that has become a rule of property which sets at naught the intention of the testator. In other words if he takes, he does so under the rule in Shelley's case.

We think that the question of intent, if controlling, must be resolved against William Elroy Salmons. This then being true we are called upon to determine whether in the statement of the devise the testator limited the estate as he intended to do or did he by inadvertence or lack of legal understanding create an estate not intended by him.

There can be no question that in the first instance his statement indicated a devise in remainder to the living sons and daughters, if any, of William Elroy Salmons in fee simple. Thus his *intention* was clearly expressed.

The intention of the testator, as found from an examination of the will and all of its parts, cannot be carried out

by a finding that in the last sentence of paragraph "Fourth" of the will the testator intended that the remainder should descend to the full line of heirs rather than to those to whom it was specifically limited in the sentence where the intention was clearly expressed and wherein the grant of conveyance was contained.

In addition to what was said in the original opinion on this subject we conclude that, to give effect to the clearly expressed intention of the testator, it must be held that the words "lawful heirs of said William Elroy Salmons" as used in the last sentence of paragraph "Fourth" were used in the same sense and with the same meaning and purpose as "sons and daughters, if any, of my said son William Elroy Salmons, who may be alive at the time of his death and to them and their heirs forever."

The former statement in order of appearance in the will is a full, complete, clear, unambiguous and specific grant of a particular estate as the language clearly imports. The latter is in no wise a grant and does not purport so to be. May this confusing purportedly explanatory statement be allowed to override the lawful purpose and clearly expressed intention of the testator? We think not, and especially in view of the existing attitude toward the rule in Shelley's case. This rule is not a favorite of the law.

"The rule in Shelley's case is not favored. It is given a strict construction. Its application is not to be extended, the courts being inclined to circumscribe its operation within the strict limits of its own boundary so that it is only when the facts bring a case under the strict letter of the rule that they will apply and enforce it." 69 C. J. 507.

The reasoning here does not run afoul of the rule whereby an earlier provision in a will is controlled by a later one. This rule is not one of general application. In fact the scope of its application is limited and narrow. The rule as stated in the syllabus in *Martley v. Martley,* 77 Neb. 163, 108 N. W. 979, is as follows: "When there is an irreconcilable repugnancy between the clauses of a will, the later will prevail over the earlier." In paragraph 5 of the syllabus in *In re Estate of Smith,* 117 Neb. 776, 223 N. W. 17,

the rule is stated as follows: "Where an irreconcilable repugnancy exists between two provisions of a will, the later will prevail over the earlier, unless from a consideration of the entire will a contrary intention is evinced." This language was approved in *In re Estate of Curtis*, 123 Neb. 97, 242 N. W. 257. In paragraph 2 of the syllabus in *In re Estate of Skinner*, 122 Neb. 438, 240 N. W. 549, the rule was stated as follows: "Where two provisions of a will are irreconcilable, the later will prevail over the earlier."

As has been disclosed by the quotations set forth this rule has no application except where there is an irreconcilable repugnancy between clauses in the will. It has no application when from a consideration of the entire instrument the intention of the testator can be ascertained and his purpose effectuated.

In paragraph 2 of the syllabus in *In re Estate of Smith, supra*, which is a quotation from *In re Estate of Vandeveer*, 110 Neb. 651, 194 N. W. 791, we find the following: "When it becomes necessary to construe a will, the entire instrument will be considered, and if, from its language, the intention of the testator can be ascertained, such decree will be entered as best effectuates the intention therein expressed." Again in *Martley v. Martley, supra*, it is stated: "Such a repugnancy will not be raised by construction, but the instrument will, if possible, be so interpreted as to give effect to all its provisions."

It will be observed therefore that in the declaration in our opinion of the nonapplication of the rule in Shelley's case to the will here being considered, we have, in accordance with the general rule well established by our authorities, carried into effect the true intention of the testator and necessity has not arisen for a resort to the rule of a later clause in a will taking precedence over an earlier one since we have found no irreconcilable repugnancy.

It has been strongly urged that in our reliance upon the case of *Albin v. Parmele*, 70 Neb. 740, 98 N. W. 29, to the extent that we did rely on it we have disregarded later decisions of this court which have renounced the rule therein set out. Contrary to the contention, careful examination

of the later cases discloses that the rule has not been renounced. It has been extended but not in such manner as to affect the conclusions arrived at in our former opinion. *Godden v. Long,* 104 Neb. 13, 175 N. W. 655; *Wilkins v. Rowan,* 107 Neb. 180, 185 N. W. 437. In those cases it is held that "issue" or "issue of the body" will be construed to mean lineal descendants, rather than children, in the absence of qualifying words showing a contrary intent. This still does not include the full line of heirs under Nebraska law but includes only lineal heirs.

We pointed out in our former opinion that the testator in his granting clause limited those who might take to less than the full line of heirs, *i. e.,* "to the sons and daughters, if any, of my said son William Elroy Salmons, who may be alive at the time of his death and to them and their heirs forever." In his explanatory statement he did not employ this full description but instead used the term "lawful heirs," yet it cannot reasonably be said that he did not refer to a limited class of takers, as is pointed out in our former opinion. See Comp. St. 1929, secs. 30-101 and 30-103; *In re Estate of Hanson,* 118 Neb. 208, 224 N. W. 2; *In re Estate of Rosenbery,* 132 Neb. 883, 273 N. W. 805.

This conclusion, from the standpoint of reason as well as the precedent contained in *Albin v. Parmele, supra,* requires the statement that here where the testator used words of purchase and of limitation interchangeably, the words of purchase must control, and the words of limitation construed to be *descriptio personæ,* as was stated in the former opinion.

We observe no reason for departing from our former opinion, therefore it is, as supplemented hereby, adhered to.

FORMER OPINION SUSTAINED.

CARTER, J., dissenting.

In my opinion, the court is required to give effect to the explanatory sentence in the fourth paragraph of the will. It must be presumed that the testator was familiar with the canons of will construction long established by this court. Consequently, it is presumed that testator intended

that every word should have some meaning. There being two inconsistent and repugnant clauses in the will involving the same property, it must be presumed that he intended the last clause in point of local position to prevail as expressing the latest testamentary intention. It must also be presumed that the testator intended that the clearly expressed general intent should prevail over a particular intent expressed in a part of the will. It must likewise be presumed that the testator intended that the later clause, inconsistent with the prior language in the same paragraph of the will, should be construed as modifying, explaining or clarifying the former. These presumptions must be given effect because they are rules of construction which this court has repeatedly announced and upon which the testator could rightfully assume that he might rely. The opinion of the majority rejects entirely the subsequent explanatory clause of the will. The rejection of this clause, and the failure of the court to apply the established canons of construction which the testator had a right to assume would be done, constitutes the will, as interpreted by the majority, as that of the court and not that of the testator.

Paine, J., joins in the foregoing dissent.