Charles E. HARRIS, Administrator with Will Annexed of the Estate of George G. Evertson, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. 322–L.

United States District Court
D. Nebraska.

March 10, 1961.

L. Verne Halcomb, Kimball, Neb., for plaintiff.

John T. Piper, Attorney, Department of Justice, Washington, D. C., for defendant.

ROBINSON, Chief Judge.

This is an action for the recovery of estate taxes alleged to have been overpaid in the amount of $18,404.61.

The pertinent facts were developed by stipulation of the parties, the testimony of witnesses and the admissions into evidence of documents and may be summarized as follows:

The decedent, George C. Evertson, died testate on November 2, 1955, and Charles E. Harris was appointed administrator with the will annexed by the Kimball County Court on April 4, 1956. The decedent entered the Kimball County Hospital at 1:45 A.M. on January 5, 1954; he was attended by Dr. A. H. Shamberg who testified that the decedent was passing a kidney stone and was in severe pain. The doctor testified that the decedent asked him to call an attorney as he wanted to take care of certain business. Mr. L. V. Halcomb was called and arrived at the hospital at about 3 A.M. on the morning of January 5, 1954, and he conversed with the decedent for approximately thirty minutes. The decedent was subsequently discharged from the hospital at 1 P.M. the following day.

On the same day, January 5, 1954, the decedent and his wife, Mrs. Minnie F. Evertson, conveyed certain real property held by them as joint tenants with right of survivorship to themselves as tenants in common. The deed was recorded on January 12, 1954, Mr. Halcomb testified that he had discussed with the decedent the advisability of such a transfer prior to his entering the hospital and he advised the decedent that such a transfer would reduce his estate tax and would offer his children more protection since his survivor would not be in complete control of the property in the event of his death.

The decedent executed his last will and testament on May 25, 1954. Paragraph 5 of the will contains a devise of "an undivided one-fourth interest in and to all of the real estate which I may own at the time of my death to my wife, Minnie F. Evertson, the same to be hers absolutely." Paragraph 6 gave the wife a life estate in the remainder of the real estate. Remainder over to the children of the decedent. Paragraphs 3 and 4 of the will gave the wife the personal property and growing crops the decedent owned at the time of his death.[1]

1. Paragraphs 3, 4 and 5 of decedent's will provides as follows:

"3. I hereby give and bequeath to my wife, Minnie F. Evertson, all of the personal property which I may own at the time of my death.

"4. I hereby give, devise and bequeath unto my wife, Minnie F. Evertson, all of the rights, title and interest which I may have in and to growing crops at the time of my death.

"5. I hereby give, devise and bequeath an undivided one-fourth interest in and to all of the real estate which I may own at the time of my death to my wife, Minnie F. Evertson, the same to be hers absolutely."

Paragraph 33 stated, however:

"This my last will and testament shall receive a liberal interpretation to the end that the intention may be carried out. Generally, it is my will that my wife, Minnie F. Evertson, shall have the control and income so long as she shall live. All benefits for my daughters, Evelyn Black and Vera Vogel and their respective children shall be received by them by way of the trusts established. All of my property shall ultimately be used for the benefit of my children or grandchildren or become the property of my children or their children or heirs as the case may be."

The questions presented here are: (1) whether certain property received by the spouse through the decedent's will constituted a terminable interest so that the marital deduction based thereon should be disallowed in the computation of the decedent's estate tax, and (2) whether the total value of the jointly held property which was transferred to a tenancy in common should be included in a decedent's gross estate.

Section 2056(a), Internal Revenue Code 1954, 26 U.S.C.A. § 2056(a), provides for a deduction from the decedent's gross estate of an amount equal to the value of any interest in property which passes from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate. Section 2056 (b), Internal Revenue Code, 1954, provides that this marital deduction shall not be allowed with respect to interests passing to the wife which constitutes a terminable interest.

Terminable interest in property has been defined, in Treasury Regulations on Income Tax (1954 Code), Section 20.-2056(b)–1(b), as an interest which will terminate or fail on the lapse of time or on the occurrence or the failure to occur of some contingency. The Supreme Court in Morgan v. Commissioner, 309 U.S. 78, 79, 80, 81, 626, 60 S.Ct. 424, 84 L.Ed. 585, 1035, held that in determining whether a terminable interest in proper-

ty passed to a wife of the decedent under the will rather than an absolute fee interest, applicable state law must be considered.

■ The first issue presented resolves itself into whether the decedent's spouse took an absolute fee interest in the property as set forth in paragraphs 3, 4 and 5 of decedent's will or whether she only took a life interest by reason of paragraph 33 of the will. When considered together, the four paragraphs of the will are ambiguous and the Court must therefore look to the entire will to determine the testator's intent. Albin v. Parmele, 70 Neb. 740, 98 N.W. 29; Heyer v. Heyer, 110 Neb. 784, 195 N.W. 109.

It is not seriously disputed that paragraphs 3, 4, and 5 of the will, when taken alone, appear to create an absolute fee interest in the property. Defendant contends, however, that paragraphs 3, 4, and 5 cannot be taken alone and must be considered in the light of paragraph 33 of the will, supra. The defendant contends that paragraph 33 of the will represents more than mere precatory language; that it represents the testator's expressed intention as to the proper disposition of the property in his estate at his death. Plaintiff alleges that paragraph 33 "is nothing more than a summary of the various paragraphs pertaining to life estates for the spouse remainders for the children in specific property, and recognizes the effect of trust provisions and the paragraphs setting forth that even as to those interests not placed in trust, the interest devised and bequeathed to decedent's children shall be received by their respective children in the event they do not survive decedent."

From the evidence presented it is clear that the decedent received some advice on estate planning from his banker and from his attorney and that his primary concern was the reduction of estate taxes and the protection of his children. On January 5, 1954, decedent and his wife transferred jointly held property to themselves as tenants in common and thereby relieved the wife from control over the entire amount of the property and en-

abled the decedent to convey interests in his property to his children. On May 25, 1954, four months after this transaction, the decedent executed his will containing the paragraphs in question and one week later decedent's wife executed her will disposing of her property in a manner similar to her husband's disposition.

From the evidence presented it is clear that the overall plan of the decedent was to have all of the family property eventually pass to the children, and this intent of the testator is reflected by paragraph 33 of his will. In Annable v. Ricedorff, 140 Neb. 93, 94–95, 299 N.W. 373, 375, the Supreme Court of Nebraska found that the widow took only a life estate where the terms of the will provided: "I give, devise and bequeath to my beloved wife * * * all my estate * * to her own use and benefit forever; and it is my desire and wish that after her death, that all the property remaining, shall be divided equally between my son * * * and my daughter * * *."

■ I have concluded that the decedent's widow in this case took only a life interest in the property under decedent's will. The Commissioner's disallowance of the marital deduction should be affirmed.

In determining whether the total value of the jointly held property which was transferred to a tenancy in common should be included in the decedent's gross estate, Section 2040, Internal Revenue Code 1954, 26 U.S.C.A. § 2040, must be considered. That section provides that the value of the gross estate shall include the entire value of all property purchased and held by the decedent and other persons as joint tenants with right of survivorship, except such part of the entire value as is attributable to the amount of consideration in money or money's worth furnished by the other joint owners. It is not disputed here that the decedent acquired the property in question, furnished all of the consideration; and that title was held in his name and his wife's name as joint tenants with right of survivorship. However, the property was not held in joint tenancy until decedent's death but was transferred to a tenancy in common.

The value of property transferred in contemplation of death is includible in the decedent's gross estate under Section 2035 of the Internal Revenue Code, 26 U.S.C.A. § 2035. Section 2035(a) provides that the value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent had at any time made a transfer in contemplation of death except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Subsection (b) provides that a transfer is presumed to be in contemplation of death if made within three years of the decedent's death.

The evidence here shows that the transfer of the jointly held property to a tenancy in common by the decedent and his wife took place less than two years prior to the decedent's death; that at the time of the transfer the decedent had just been released from the hospital; that he had been advised to make the transfer in order to avoid estate taxes and also protect the interests of his children by keeping complete control of the jointly held property from the survivor.

Treasury Regulation, Section 20.2035–1(c) defines a transfer in contemplation of death as one made with the purpose of avoiding death taxes; made as a substitute for a testamentary disposition of the property; or made for any other motive associated with death. See and compare United States v. Wells, 283 U.S. 102, 118, 51 S.Ct. 446, 75 L.Ed. 867.

On the trial of this matter decedent's attorney testified as follows:

"I did, during the time I was at Kimball, become acquainted with one George G. Evertson, and I was on several occasions requested by him to do a small amount of legal work. There was included among the requests which he made of me an explanation of the various ramifications of the different methods of holding the title to property. * * "

"Question (By Mr. Piper): I gather that the banker who advised

the decedent attempted to advise holding property in joint tenancy? Answer (By Mr. Halcomb): That I gathered, yes.

"Question: The purpose of this probably was to avoid probate fees and paying attorney fees for probate, is that correct? Answer: Mr. Evertson did not tell me that, but I think that was taken for granted.

"Question: You, on the other hand, I gather, cautioned him that joint tenancies had some different tax ramifications, as you put it, than say a tenancy in common in that a joint tenancy might result in having all the property included in his gross estate at death? Answer: This was a dual difficulty with joint tenancy that I particularly mentioned to Mr. Evertson. I did refer to the tax question. There is no question about that, and also, I pointed out that he leaves the survivor in complete control of all of the property that has been accumulated by the couple, and the children are not given any protection, and I particularly explained that to Mr. Evertson * * *.

*    *    *    *    *    *

"Question: I gather you normally did not practice law at 3:00 o'clock in the morning? Answer: That is true.

"Question: On this occasion of January 5th, however, you did practice law because you were called by the doctor or somebody else to the hospital? Answer: I am satisfied it was Dr. Shamberg * * *.

*    *    *    *    *    *

"Question: You did have the conference in the hospital with the decedent? Answer: Yes, sir.

"Question: In that conference with you, he wanted to go ahead and convert his real property from a joint tenancy to a tenancy in common? Answer: I am sure that I did not do anything that night except talk to him, and the doctor said they were not going to operate on him * * *.

*    *    *    *    *    *

"Question: You managed, however, to have the instrument drawn and executed some time during that day, probably in the afternoon after his release from the hospital? Answer: I would think that was right. I mean, it is dated the 5th, and there would be no reason in the office to put a thing on it that was not correct.

*    *    *    *    *    *

"By the Court: On the evening that you were called to the hospital, Mr. Halcomb, did he (the decedent) have any worry about continuing to live? Answer: He was concerned. He didn't want them to operate on him. That is what he said, 'I don't want them to operate on me without having this done,' * * *.

"By the Court: In other words, as I get it, it was your impression that if he were going to have an operation, he wanted to get his affairs taken care of before the operation?

"The Witness: I think that is right, your Honor."

From the evidence presented the Court can only conclude that the transfer was made in contemplation of death.

In the present case there was an interest in the jointly held property of which the decedent made a transfer, cf. Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L.Ed. 991 and the transfer of the jointly held property to a tenancy in common was not a sale of the interest of each therein to the other for an adequate and full consideration in money or money's worth, cf., Sullivan's Estate v. Commissioner, 9 Cir., 175 F.2d 657, within the meaning of Section 2035 Internal Revenue Code, 1954.

Judgment should be entered for the defendant. Counsel for the defendant will prepare and submit Findings of Fact, Conclusions of Law and an Order for Judgment within 30 days from the date hereof.